## Neace v. Buchanan Coal Co. et al.

Nov. 28, 1944.

Ward & Ward for appellant.

Craft & Stanfill for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE CAMMACK —Affirming.

Zach Neace, age 48, sustained an injury to his right leg as a result of falling slate in the mine of the Buchanan Coal Company. He was taken to Hurst-Snyder Hospital in Hazard, where he was treated by Dr. Snyder, who testified for the Company. An X-ray examination of Neace's right leg and femur showed a comminuted fracture of the surgical neck of the right femur. Neace remained in the hospital about two weeks. When he left the cast was removed from his leg and Dr.

Snyder said that another X-ray showed the fracture was "pretty well healed, but not complete," and that the angle between the neck of the femur and its shaft was greater than it had been normally, causing a little shortness of the right leg. Neace received full compensation for several months. He and the Company entered into some sort of settlement agreement, but, subsequently, he filed his claim for compensation with the Board. On final hearing it was determined he had suffered a 35 per cent disability to his right leg as a whole and he was awarded compensation accordingly.

The appeal is based upon the contentions that an award should have been made for disability to the body as a whole, and there was no issue of fact because the Company offered no evidence as to disability to the body as a whole.

Neace testified he had been unable to do any manual labor since the date of his injury, August 14, 1941, and that he was totally and permanently disabled. Dr. J. C. Coldiron said he treated Neace April 2, 1942, at which time his physical condition was very poor. He said he concluded from a physical and stethoscopic examination of Neace's chest, that he did not have tuberculosis. When examined concerning X-ray pictures made by Dr. J. Campbell Thompson, of Lexington, Dr. Coldiron said the surgical neck of the femur had been broken and grown together, which produced a change in the normal angulation of the femur with the bony pelvis, and that there was a slight tilt of the bony pelvis. He testified further: "* * * Also an artery of the upper part of the trochanter which is replaced inwardly. There is a slight tilt of the bony pelvis being displaced towards the midline of the body. The displacement of the surgical neck is to such an extent that there is a shortening of the lower right limb as a whole, of 1 1-2 inches."

It was the doctor's opinion, based upon the history of the case given him, his examination of Neace and his reading of the X-rays, that Neace was totally and permanently disabled for all types of heavy manual labor.

Dr. Thompson testified that from his limited physical examination of Neace and from his examination of the X-rays: "A. The films of the pelvis and right hip show a fracture through the base of the neck of the

right femur with the broken surface of the neck displaced anteriorally and rotated internally until the fragment of the shaft of the bone is in contact with the posterior side of the neck. There is a shortening of the right leg of about one and one-half inches due to the upward displacement of the shaft and of the neck of the bone. The greater trochanter has been broken off and is displaced slightly to the internal side. There is some evidence of callous around the fragments. Healing is incomplete. The anterio-posterior and lateral views of the ankle show no evidence of any fracture. There is a very marked amount of atrophy of disuse. Patient shows well developed arteriosclerosis of the arteries." This doctor said he thought Neace's condition was permanent and that he did not think he would be able to do a great deal of work in a coal mine because of the limitation of motion in the right femur and the right hip joint.

Dr. Heman Humphrey and Dr. Orville Miller testified for the Company. Both referred to the shortness of Neace's right leg. Their descriptions of the fracture were substantially the same as that given by Dr. Snyder. Both said their examinations revealed arteriosclerosis, which was in no way associated with the injury. Dr. Humphrey placed the disability at 35 per cent to the leg as a whole, while Dr. Miller placed it at 25 per cent. Both doctors said that in their opinion Neace was able to perform manual labor. On cross-examination Dr. Snyder said an X-ray examination of Neace's chest on March 1, 1942, revealed a rather extensive tubercular lesion of the left chest with the possible involvement of the lung roots of the right chest. He said also he thought Neace was able to perform hard manual labor. On cross-examination he said Neace had a 21 per cent disability to the body as a whole.

Where there is evidence of probative value supporting the finding of the Board on a question of fact, it is our policy to approve its finding. Consolidation Coal Co. v. Mills, 296 Ky. 151, 176 S. W. 2d 278. While it is beyond question that Neace received an injury which will cause him to be permanently disabled to some extent, we can not say there is no evidence of probative value to sustain the Board's finding. If we were to sustain the appellant's first contention, it would be necessary that we accept the testimony of the two doctors

who testified in his behalf and disregard that of the three doctors who testified for the Company. As we have noted, these three doctors estimated Neace's permanent disability to his leg as a whole at from 25 to 35 per cent, all of them saying, in their opinion, he was able to perform manual labor. Then, too, there was some evidence tending to show he was suffering from arteriosclerosis, and that a tubercular condition existed.

We can not agree with the contention that there was no issue of fact presented in the record. All of the testimony went to the extent of Neace's disability. Of course his testimony was to the effect that he was permanently and totally disabled, while the Company was seeking to show he had only a partial disability to his right leg. Furthermore, it can not be said there was no evidence produced by the Company's witnesses as to the extent of the disability to the body as a whole, because Dr. Snyder said, in answer to a question on cross-examination, that the disability was 21 per cent to the body as a whole.

Judgment affirmed.